## A. D. MORROW v. STATE.

No. A-4388.   Opinion Filed March 10, 1923.
(212 Pac. 1008.)

(Syllabus.)

1.   **Trial—Instructions on Burglary Sufficient where no Request for More Explicit Instructions.** Under the circumstances in this case, where no request is made for more explicit instructions to the effect that proof of another larceny or burglary would not support a conviction of the larceny charged, there was no error in failing to give such an instruction. The instructions given sufficiently apprised the jury that proof of the burglarizing of the premises described in the information was essential to authorize a conviction.

2.   **Burglary—Explanation of Possession of Stolen Property—Credibility to Justify Acquittal.** Not every explanation, reasonable

or unreasonable, of the possession of recently stolen property, or of the possession of property similar to that stolen, will justify an acquittal. To so operate, the explanation should be both reasonable and worthy of belief.

Appeal from District Court, Custer County; Thomas A. Edwards, Judge.

A. D. Morrow was convicted of burglary in the second degree, and he appeals. Affirmed.

A. J. Welch, for plaintiff in error.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J. A. D. Morrow, plaintiff in error, here referred to as the defendant, was on April 8, 1922, by a verdict of a jury convicted of the crime of burglary in the second degree, and his punishment fixed at confinement in the state penitentiary for a term of three years. The information charged that the defendant by force, fraud, and stealth broke into a certain granary belonging to R. D. Cole, and took and carried away 6 sacks of wheat belonging to Cole, with the intent on the part of the defendant to permanently deprive the owner of this wheat and to convert the same to his own use.

The testimony on the part of the state was to the effect that Cole had recently threshed his wheat and had placed the grain in sacks, to the number of 81, in a granary on his premises, under lock and key; that on the night of the 15th of September, 1921, this granary was broken into by some one, and 6 of the sacks of grain were removed and carried away; that a man by the name of Ed Clifft informed Cole the next day that he had met the defendant on the road to Elk City with some sacked wheat in his car on the night previous. Upon inquiry Cole was informed that the defendant sold several sacks of wheat at Elk City early in the morning following

the night his granary was broken into; that at this time there was a county fair in progress at Elk City; while in Elk City on the day following the theft the witness met the defendant and his brother on the street, and charged them with having stolen his wheat; that when he made the accusation one of the Morrow boys, Johnnie, offered to pay for the wheat, saying, "We will pay for the wheat, but we'll get even with you." Johnnie was a brother of this defendant, and was jointly charged with defendant for the commission of this offense.

Witness Dan Wilson testified that he saw the defendant and his brother driving into Elk City early on the morning in question, and that they had some sacks of what appeared to be wheat in their car; that he noticed that the sacks were sewed shut with string; that he himself had helped place 81 sacks of wheat in the Cole granary. Oscar Clifft testified that he had also worked for Mr. Cole and that he also had counted the wheat sacks in the granary; that he had sewed the sacks shut with string and binding twine; that after the granary had been broken into there remained but 75 sacks; that the sacks, for the most part, were what are called gunny sacks or tow sacks, and were of a yellowish color, indicating that they had been used for containers of cotton seed meal or cake.

Ed Clifft testified that on this particular night he was driving a Buick car, and that Guy Eggleston was driving a car right in front of him; that Eggleston had a collision with a car driven by the defendant and his brother; that they all got out of their respective cars, and witness noticed that the defendant and his brother had 6 sacks on the frame built back of their runabout car; that the witness felt of one of the sacks and knew it contained wheat; that the place where this accident occurred was between the Cole granary and Elk City. Guy Eg-

gleston testified that, when the collision occurred, he and the others got out to examine the cars, to see what damage was done, and remained there for some minutes; that he noticed that the defendant and his companion had 6 sacks of something in the rear end of their car or truck; that one of the sacks had fallen off onto the fender of the car, and one had fallen to the ground. Witness could not describe the sacks, except to say that he remembered that they were tow sacks.

A. A. Hill testified that he was in the milling and grain business at Elk City; that while the fair was in progress he bought 5 or 6 sacks of wheat from two men, and in payment for the wheat made out a check to one who said his name was J. C. McClung; that the check was afterwards cashed and paid; that he examined the wheat in one of the sacks, which was sewed shut with string, and that he cut the string to examine the wheat; that the sacks had a yellowish cast, and looked as though they might have been used for cotton cake sacks; that they were not regular brown sacks, or regular wheat or grain sacks.

The defendant claimed that the sacks in which he had taken the wheat to Mr. Hill's mill had been purchased by him, and that the wheat he sold had in fact been stolen, but from another place. These sacks were on exhibition in the court-room, and in connection with their identification witness Hill was asked the following questions:

"Q. You know you took a sample out of one of them? A. Yes, sir.

"Q. You do know it wasn't like these cotton sacks; that is, these duck sacks here? A. No, sir; the one I opened wasn't.

"Q. Now, what do you say as to their general quality, compared to these sacks lying before you here? A. Well, the one I opened didn't look like these.

"Q. What did it look like? A. It looked something like it had been a cake sack."

The defendant testified that he did not commit the burglary charged and that he had not at any time recently been at the Cole place. He stated that on the night of September 15, 1921, he and his brother stole about 10 bushels of wheat from an old house located on the farm of N. A. Wells, about 3 or 4 miles from the Cole place; that they took this wheat from a bin and poured it into 6 sacks, which were carried to Elk City that night and sold the next morning to Mr. Hill. Defendant admitted that he met the state's witnesses while on the way to Elk City with the wheat that night. Defendant claimed that he bought these sacks, which were the sugar sacks in evidence, in which this wheat was carried to town, at the Bass grocery store in Elk City on Tuesday before he took the wheat. He also admitted that the check for the wheat was made payable to J. C. McClung, a fictitious name. He further admitted that he and his brother, when accused by Cole of having stolen his wheat, paid Mr. Cole $10, stating that he did this in order that Cole might not make a further investigation, which would involve him in the theft of the wheat which he claimed he actually did steal.

Mr. Wells testified that he owned a little house on the road between the Cole premises and Elk City, in which he had placed about 30 or 32 bushels of wheat, and that on the Monday after the 15th of September he measured this wheat and came to the conclusion that he had lost about 10 or 12 bushels.

There are but two assignments of error seriously urged in defendant's brief: First, failure of the court to instruct the jury on the defendant's theory of the case, to wit, that the wheat stolen was not the wheat described in the informa-

tion; second, that the evidence was insufficient to support the verdict.

In the trial below no objections were made or exceptions taken to any of the instructions, and no request was made for further instructions.. After defining burglary in the second decree, the court instructed the jury as follows:

"You are instructed that when the fact that a burglary has been committed is shown, and the question is whether or not the defendant committed it, his possession of property contained in said burglarized building, at a time not too long after the burglary, is a circumstance for the jury to consider and weigh in connection with all the other evidence, facts, and circumstances in the case. Its significance will vary with its special facts, and with the other facts in the case, among which are the nearness or remoteness of the proven possession to the burglary; the nature of the property, as passing readily from hand to hand, or not; what explanation he made, if any, of his possession of said property—together with such other facts and circumstances as would reasonably influence the opinion of the jurors as to the guilt or innocence of the defendant."

Then followed instructions that, if the jury should believe from the evidence, beyond a reasonable doubt, that the defendant broke into and stole property from the "house described in the information" payment for the property stolen was no defense. Other instructions referred to the "house described in the information." Under the circumstances here, and where no request is made for more explicit instructions to the effect that proof of another larceny or burglary would not support a conviction of the larceny charged, there was no error in failing to give such an instruction. The instructions given sufficiently apprised the jury that proof of the burglarizing of the Cole premises was essential to authorize a conviction.

Not every explanation, reasonable or unreasonable, of the possession of recently stolen property, or of the possession of property similar to that stolen, will justify an acquittal. The jury may not believe, and in this case evidently did not believe, the explanation made. The defendant was a self-confessed thief. His explanation was that he stole the wheat from another man and from another place than that charged. Posssibly he and his brother stole wheat from both places, but we are here concerned only with the wheat taken from the Cole premises. The person who bought the wheat, and others, said the sacks looked like cotton seed or cake sacks, and were sewed with cord. The defendant said that they were sugar sacks, purchased at a grocery store in Elk City, but no effort was made to verify defendant's story by the testimony of the person who was claimed to have sold him the sacks. The sugar sacks were in court; the jurors had an opportunity to observe them, and to observe and consider the demeanor and apparent candor of the witnesses, and were better able than we to judge of the truthfulness of the respective stories of the witnesses. From the record here it appears that the jury were justified in concurring in the verdict rendered.

The judgment of the trial court is affirmed.

MATSON, P. J., and DOYLE, J., concur.