## JOSE ALVARADO v. STATE.

No. A-6318.   Opinion Filed Dec. 17, 1927.
(261 Pac. 983.)

A. C. Brewster, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Osage county on a charge of burglary and was sentenced to serve a term of seven years in the state penitentiary.

On the night of September 17, 1925, the store of Porter Williams at Burbank, Okla., was broken into and merchandise consisting of ladies' coats, dresses, furs, and men's hose, suits, gloves, shirts, and leather coats, of a total value of about $2,500, was stolen therefrom. The following day, a Mrs. Mamie Clifton, the janitress or housekeeper of the guest house of the Sinclair Oil & Gas Company at Shidler, discovered this merchandise in a closet in this house just across the hall from a room occupied part of the time by defendant. She called this discovery to the attention of J. W. Stoker, superintendent of the company, who went to the dormitory, examined the merchandise, and then sent for defendant, who, in response to his message, came to the company office. At this time and for some five or six months defendant had been employed by the Sinclair Oil Company and several other oil companies to act somewhat in the capacity of policeman to guard the property of various companies against theft, and in such capacity he had a right to occupy one of the rooms at the dormitory. Stoker asked him about the merchandise and defendant informed him that it was stuff which had been confiscated and taken from some "crooks" up near Cooper; that he drove up to a house there and a car drove away; they took after it, and the stuff was thrown out and picked up along the road; that he then returned to the house from whence the car had driven and got the other stuff and brought it to the dormitory for evidence. Stoker required him to remove this merchandise from the company's building and that night it was moved by defend-

ant and Ben Hughes, Jr., generally referred to as Whitey Hughes. Before taking it away an inventory was made by defendant, who informed Stoker he was going to find the rightful owner and return it to him. On taking the merchandise from the dormitory defendant and Hughes moved it to a house about a mile south of Webb City on a lease of the Gypsy Oil Company. About this time defendant gave some nine or ten dresses, a coat, and possibly some other garments to Nora McGinnity, a young woman to whom he was engaged to be married. These garments defendant testified he procured at Oklahoma City, Tulsa, and different places, and they were in the nature of a "hope chest." Numerous items of the property given by defendant to Miss McGinnity were identified as having been stolen at the time of the burglary. Some days after, Hughes made arrangement and returned a portion of this merchandise to Williams and received a reward of $250 in cash. Defendant and Hughes were jointly informed against, a severance was had, and Hughes is one of the principal witnesses for the state. He testified, in substance, that he and defendant agreed to burglarize the store in question; that they went there in defendant's car about 2 o'clock a. m.; that he broke in the front door while defendant stood guard; they went in and broke open the back door, selected the merchandise to be stolen, and then drove the car to the entrance of the alley near the rear of the store, loaded in the merchandise, and took it to the dormitory of the Sinclair Company, where it was later discovered; that, after it was discovered and ordered removed from the dormitory, he and defendant took it to a house selected by defendant on the Gypsy lease; that defendant took a portion of this merchandise, and stated he intended to give it to his girl, and took another part of it for his own use; that he (Hughes) appropriated a part of the merchandise for his own use and gave some to his wife; that later he and defendant agreed that they would return the re-

mainder of the merchandise to the owner and get a reward of $250 which was offered; that he returned it, received the reward, and gave a part of it to defendant. These various matters are testified at length; numerous matters were detailed which are not set out in this brief statement.

The first contention argued is that there is no sufficient corroboration of the testimony of the witness Hughes. The testimony of Hughes, if taken as true, fully establishes the state's case; that is, it presents the theory of the state that defendant and Hughes were the burglars and thieves and that Hughes is an accomplice of defendant in the commission of the crime charged. Defendant cannot be convicted, unless there is testimony corroborating Hughes tending to connect defendant with the commission of the crime. The corroboration is not sufficient if it merely shows the commission of the crime or the circumstances thereof, but must go further and tend to connect the defendant with its commission. Section 2701, Comp. St. 1921. The sufficiency of the corroboration of the testimony of an accomplice has had the consideration of this court in many cases. In some of these cases the corroboration has been held insufficient. Camp v. State, 7 Okla. Cr. 531, 124 P. 331; Flynn v. State, 10 Okla. Cr. 41, 133 P. 1133; Kirk v. State, 10 Okla. Cr. 281, 135 P. 1156; Hicks v. State, 18 Okla. Cr. 718, 196 P. 144; Jolliffee v. State, 21 Okla. Cr. 278, 207 P. 454; Smith v. State, 27 Okla. Cr. 206, 226 P. 390; Livingston v. State, 29 Okla. Cr. 247, 233 P. 235. In other cases the corroborating evidence has been held sufficient. Moody v. State, 13 Okla. Cr. 327, 164 P. 676; Davis v. State, 18 Okla. Cr. 453, 196 P. 146; Morrow v. State, 23 Okla. Cr. 98, 212 P. 1008; Blumhoff v. State, 29 Okla. Cr. 4, 231 P. 900; Davis v. State, 34 Okla. Cr. 415, 246 P. 651.

The authorities discussing the sufficiency of corroborating testimony can do no more than illustrate and state the rule of law applicable. The sufficiency of the corroboration is a question of law for the court, and it is necessary here to scan the testimony to ascertain if it is sufficient to satisfy the requirement of the law. If it is, its credibility and weight is for the jury. It is said that the corroborating evidence need not cover every material point testified to by an accomplice; but, if there is independent evidence as to some material fact or facts tending to connect defendant with the commission of the crime, it is sufficient. Nor is it necessary that the corroborative evidence directly connect him with the crime; it may be circumstantial.

Bearing in mind that the accomplice, Hughes, has testified to a state of facts establishing all the elements of the offense charged, we scrutinize the record to ascertain wherein and to what extent he is corroborated by independent evidence. It may be considered admitted that the building alleged was broken into at the time alleged and a large quantity of merchandise stolen therefrom; that this merchandise was found the next day in the possession of defendant. This possession is an evidentiary fact which the jury may consider. Blumhoff v. State, supra; Davis v. State, supra; Morrow v. State, supra.

It also appears that, when questioned about his possession of this property by Mr. Stoker, defendant did not answer truthfully, or at least not fully so. It is admitted that, on the night after its discovery in the dormitory, this merchandise was, by defendant and Hughes, removed and stored at another place. There is also evidence that a portion of this merchandise was appropriated by defendant and given by him to another person or persons; a considerable volume of it being given to Nora McGinnity. Upon this point defendant admits giv-

ing considerable wearing apparel to this young woman, but claims he purchased it at other places: He is not corroborated in any particular in his explanation that he procured the merchandise given this woman elsewhere. There is evidence that defendant sent a suit of clothes and an overcoat of this merchandise to John O'Fallon. Hughes testified defendant sent them and he gave them to O'Fallon; and O'Fallon testified Hughes gave them to him with a message, and that the next day defendant asked him if he received the suit and overcoat he sent; that for reasons detailed defendant was under obligations to him. There is some corroboration by the wife of Hughes that defendant was present when Hughes gave her some of this stolen merchandise and that defendant made statements indicating that he knew it was stolen. There was also testimony that at the time of his arrest defendant was wearing one of the shirts stolen at the time of the burglary. Defendant claimed he purchased this shirt from the Osage Mercantile Company in Pawhuska in October, but the buyer for that firm testified in rebuttal that his firm never handled such a shirt. Then there is this circumstantial evidence: Defendant did not report his possession of this stolen property to any officer of Osage county and the further circumstance that, while defendant claimed he was holding the stolen property to acquire further evidence to prosecute the thieves, no complaint was made at the return of the property by Hughes to Williams.

It is fair to say that several of the witnesses for the state do not appear to be paragons of rectitude. Hughes is an ex-convict; in fact, the writer of this opinion, as trial judge, sentenced him for the theft of an automobile, the conviction referred to in the evidence. It was also disclosed that the witness O'Fallon had been convicted in the federal court and had been sentenced for a term of seven years, from which conviction he had an appeal pending. These matters, however, were called

to the attention of the jury. The credibility of the witnesses is within their province. It was for them to say whom they would believe or disbelieve.

There are some other facts and circumstances not detailed which might be construed as having a tendency to connect defendant with the commission of the crime. Upon a consideration of the entire evidence we are thoroughly convinced there is sufficient corroboration to satisfy the requirement of the law.

The argument is made that the court's instructions Nos. 7, 8, 9, and 10 are prejudicially erroneous. Instruction 7 is that, if the jury find from the evidence beyond a reasonable doubt that defendant alone or with any other person broke into and entered the building, as alleged, with the intent to steal the personal property kept therein, or to commit any felony, then and in that event he would be guilty of burglary in the second degree; but, if after a careful consideration of all the evidence, facts, and circumstances the jury entertained a reasonable doubt, that doubt should be resolved in favor of defendant and he should be acquitted. Defendant insists this instruction is erroneous, in that the jury are not further told that the breaking and entering must be with the intent to convert the property to the use of the taker and to deprive the owner thereof, or that the taking of the property must be without the consent of the owner, citing Sullivan v. State, 7 Okla. Cr. 307, 123 P. 569; Parker v. State, 13 Okla. Cr. 460, 165 P. 622; Lockhart v. State, 10 Okla. Cr. 582, 139 P. 1156.

No objection by demurrer or otherwise was made to the sufficiency of the information. It alleges a breaking and entering with the unlawful, burglarious, and felonious intent to commit the crime of grand larceny, to wit, to take, steal, and carry away certain personal property of a value of $2,500 with the intent to deprive the owner thereof and to convert the same to the taker's

own use. This court in the Sullivan Case held that, where an information charges a burglary for an unlawful breaking and entering with intent to steal, in alleging the intent it is necessary to set out the elements required to constitute the crime of stealing at common law. This was followed in the Parker Case. In both of these cases the question goes to the sufficiency of the information, and not to any instruction. Defendant contends that the instruction defines a misdemeanor under section 2066, Comp. St. 1921, and not a felony under section 2063, Comp. St. 1921. There was no request for a more specific instruction upon this point and the exception to the instruction is general and no particular objection is pointed out. It cannot be said that this instruction defines a misdemeanor as defined by section 2066. That section does not apply to a "breaking and entering," but merely to an "entering." Instruction 7 requires that it be found beyond a reasonable doubt that defendant broke and entered with the intent to steal or commit a felony before a verdict of guilty could be returned, clearly within the terms of section 2063. The word "steal" had a uniform significance both in legal parlance and in common understanding. It means the felonious taking and carrying away of the goods of another without right and without leave or consent of the owner. Underwood v. State, 23 Okla. Cr. 119 212 P. 1010; Cope v. State, 23 Okla. Cr. 161, 213 P. 753; Goertz v. State, 29 Okla. Cr. 261, 233 P. 768; Pearce v. State, 33 Okla. Cr. 273, 243 P. 761.

The court in instruction 7 used the word "steal" as applying to the necessity to prove a criminal intent and in the sense and with the signification stated. While we do not approve the instruction as a model, it is not prejudicially erroneous.

Instruction 8 informs the jury that the witness Hughes by his own testimony is an accomplice and that a conviction cannot be had on his testimony unless it is

corroborated by independent evidence tending to connect defendant with the commission of the crime charged. Defendant argues that the court should have submitted to the jury the question whether or not Hughes is an accomplice. Since the jury in several of the instructions are told, in substance, that, if they have a reasonable doubt of the guilt of defendant, they must give him the benefit of the doubt and acquit, and are told that all the instructions must be considered and construed together, instruction 8 states the law more favorably for defendant than the instruction he now contends for. Instructions 9 and 10 inform the jury the purpose and consideration to be given evidence of the good or bad character of defendant; they fairly state the law.

Complaint is also made that the court did not define a "forcible breaking" such as would constitute burglary. There was no request for any instruction upon this point. The term is as well understood by the jury as any definition would have been. The evidence was of the forcible breaking with a pipe wrench and the prying open of the door with an iron-wrecking bar, and no question of the sufficiency of the breaking to constitute burglary was suggested at the trial. It is also set out as error that the court did not give an instruction upon impeachment of a witness. No authorities to support this assignment are cited. No request for such instruction was made, and the general instruction as to the credibility of the witnesses and the weight and value to be given their testimony and the rules by which their testimony should be weighed and considered is sufficient.

Lastly, it is argued that the court erred in failing to give an instruction on alibi. The defendant testified to a state of facts amounting to an alibi. The mother of defendant also gave testimony tending to corroborate defendant, although her testimony does not absolutely preclude the presence of the defendant at the time and place of the burglary. No request for an instruction on the law

of alibi was made. This court, in the case of Inklebarger v. State, 8 Okla. Cr. 316, 127 P. 707, said:

"Where a defendant is upon trial, and the defense of an alibi is relied upon, and the defendant does not request a special instruction upon this subject, and does not except to the action of the court in not charging on alibi, a conviction will not be reversed where such instruction is not given, unless it clearly appears from the record that the defendant was injured thereby."

In that case, however, the evidence of alibi was less prominent than in this case. This court, in the case of Spess v. State, 20 Okla. Cr. 84, 201 P. 395, said:

"The defense of alibi is not an involved one. The adult with ordinary intelligence and limited experience is fully able to understand and comprehend that if a person (whose presence at the scene of the crime is relied upon for conviction) was at another, different and distinct place at that time, it was a physical, as well as legal, impossibility for such person to have committed the offense. Alibi is not an extrinsic defense. It amounts to nothing more than a mere traverse of the material averments of the information or indictment. It is introduced for the purpose of creating a reasonable doubt of guilt, and we think its nature is fairly understood by the average juror. Apparently it has been more of a nightmare to the courts than to the juries. As this defense involves a clearcut issue of fact, practical men (such as compose a trial jury) can more readily comprehend and truthfully decide the issue than can the courts, trained in technicalities, establish uniform principles of law applicable to such defense in every jurisdiction. It may be seriously doubted if any instruction on alibi should be given beyond the general instructions 'that the defendant is presumed to be innocent,' and 'that the burden rests upon the state to prove his guilt beyond a reasonable doubt.' The views herein expressed result from a consideration of the numerous and conflicting decisions construing instructions on alibi and the varied reasons given for such holdings.

"In some jurisdictions the burden is upon the defendant to establish this defense 'to the satisfaction of

the jury,' in others 'by a preponderance of the evidence,' in others 'by evidence tending to raise a reasonable doubt of guilt.' Why these various holdings? Certainly such confusion could never have arisen had no specific instruction on alibi been given. In all these jurisdictions the state is required to establish guilt 'beyond a reasonable doubt'; if the burden never shifts to the defendant to establish his innocence, then it is apparent that any evidence (be it that of alibi or weakness of the state's case) which creates a reasonable doubt is sufficient to authorize an acquittal.

"The general instruction on 'reasonable doubt' ought to be sufficient to cover a simple issue of fact such as an alibi, any other instruction on the subject, if correctly stated in this jurisdiction, would be nothing more in its final analysis than stating the same burden in different language."

Upon a consideration of the entire record it conclusively appears that defendant was properly charged; that there is ample evidence sustaining the charge; that the issues were fairly submitted and no prejudicial errors affecting the rights of defendant are made to appear. No reason to disturb the verdict is made to appear.

DOYLE, P. J., and DAVENPORT, J., concur.