## M. R. GADDY v. STATE.

No. A-8804.   June 14, 1935.
(46 Pac. [2d] 380.)

R. N. Linville, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, P. J.   The plaintiff in error, for convenience hereinafter referred to as the defendant, was by information jointly charged with A. H. Rains of the crime of burglary, was tried separately, convicted of burglary in the second degree, and his punishment fixed at confinement in the state prison for a term of five years.

The testimony on behalf of the state in substance shows the home of Edward L. Martin, located at 515 North

Adam street, Elk City, Okla., on the 17th day of July, 1933, was burglarized and considerable property taken, consisting of clothing of Edward L. Martin, his wife's and baby's clothes, of the value of $250. The Martin family was away from home at the time of the burglary.

W. Wagnon, testifying for the state, said:

"I lived near the Martin home on the 17th day of July, 1933. On the morning of the 18th or 19th I noticed a screen off a window, and went over to the house and saw a window had been raised. I then went around to the west side of the house and found a door open. I called Mr. Thompson, and went into the house and found coat hangers on the bed. A trunk had been opened and the tray set out of the trunk."

Edward L. Martin stated that:

"After we had returned to our home, I was on the streets of Elk City and saw May Rains, a daughter of A. H. Rains, and another girl going down the street toward a dance hall, and noticed that each of them had on dresses belonging to my wife. The next morning after seeing the dresses on the girls, Bob Green and I went to the A. H. Rains store in Elk City, and found one man's vest, and had a conversation with Mr. Gaddy, the defendant, about the dress we found on May Rains. Mr. Gaddy claimed he bought the stuff from other parties, I don't remember the names. He showed us a record at that time claiming to be a record of the items he had bought from some one who was a stranger. He said the dress May Rains had on the night we saw her had been bought by him from this party from whom he bought the other stuff."

The entry of the articles claimed to have been bought by the defendant Gaddy was introduced in evidence, showing the purchase of three dresses, one light hat, and one pair of pants.

The testimony further shows that a number of the things taken from the Martin home was found under the

building occupied by the secondhand store and living apartment of A. H. Rains, and on top of the building. The testimony further shows the defendant was occupying a part of the building for a sleeping room, and was interested with A. H. Rains in the secondhand stuff they bought and sold; this defendant making the repairs and sharing the profits when an article was sold.

The testimony of the witness Martin as to the property found by them at the secondhand store and building occupied by this defendant and A. H. Rains was objected to on the ground that it was unlawfully secured; the building being searched without a search warrant.

The testimony further shows by Martin that he and a Mr. Thompson went to Altus, in Jackson county, several months after this house was burglarized, and went out to where the defendant Gaddy was picking cotton and placed him under arrest, then came back to where a truck was parked, which truck was owned by Rains. The officers claim that, after they had placed Gaddy under arrest, they searched the truck in the presence of the defendant Gaddy, opened up the truck cushions, and found three coats sewed up in the cushions, one black coat with brown fur collar, a little tan polo coat, and a little blue coat. The proof further shows that the property found in the cushion of the truck that had been driven by Gaddy out to where he was engaged in picking cotton was part of the things taken from the Martin home.

It is further shown that, after the state's witnesses testified they went to the place of business of Gaddy and Rains, they found certain articles of clothing in their store that belonged to Martin, a search warrant was procured, and the place of business and residence searched and other articles found, some under the floor, and some on top of the building.

The officers testified that, before they searched the truck that belonged to Rains that had been driven out to the cotton field by Gaddy, they placed him under arrest, and then searched the truck, attempting to justify their action in making the search on the ground that the defendant Gaddy was under arrest at the time.

The defendant, testifying for himself, denies any knowledge of the fact that the goods found and identified as belonging to Martin were stolen at the time he received them, and claims he bought a number of these things found in the store of Rains and the defendant from some unknown party. The defendant also stated he did not know how the articles of clothing found in the cushion of the truck got into the cushion; in other words, the defendant denied any knowledge of the fact that the property found in the store, on the Rains girl, under the house, on top of the house, or in the cushion, was stolen. The foregoing is in substance the testimony in this case.

The defendant has assigned ten errors alleged to have been committed by the trial court. The first assignment alleges that the court erred in overruling plaintiff in error's motion to suppress the evidence obtained by means of the search warrant. The record has been carefully examined, and the court has reached the conclusion that the court committed no error in overruling the defendant's motion.

The defendant in his argument discusses at length his errors, and insists that the verdict is contrary to the law and the evidence, and that the evidence is insufficient to sustain the verdict and judgment. The record discloses a conflict in the testimony. This court has repeatedly held that, where there is any competent evidence in the record, though conflicting, the question of the sufficiency of the evidence is a question for the jury. Before a conviction

will be reversed as contrary to the evidence, it must appear there is no testimony in the record from which the jury could rationally conclude defendant was guilty, unless it appears the jury was influenced by improper motives. Wininger v. State, 55 Okla. Cr. 78, 24 Pac. (2d) 664; Adams v. State, 54 Okla. Cr. 363, 21 Pac. (2d) 1075.

The next question discussed by the defendant is the instructions of the court. The defendant urges that the court committed error in its instructions from 1 to 6, inclusive, and presents a number of authorities which he thinks sustain his position that the court placed the burden of proof on the defendant. The instructions of the court have been carefully read and studied, and we hold that the court in its instructions properly declared the law applicable to the facts; that the errors complained of are without merit.

The instructions must be considered as a whole, and, when considered together, if they fully state the law applicable to the case, they are sufficient, although there may be verbal inaccuracies not of sufficient importance to have misled the jury to the injury of the defendant. Alvarado v. State, 38 Okla. Cr. 360, 261 Pac. 983.

In Foust v. State, 36 Okla. Cr. 390, 254 Pac. 982, this court held:

"Where an accused has the possession of recently stolen property and attempts to explain his possession, the burden of proving the truthfulness of his explanation is on him, and, even though it may be reasonable, is a question of fact for the jury."

Under our statute, the court must state to the jury all matters of law which it thinks necessary for the jury's information in rendering its verdict, and, if it states the testimony of the case, the court must, in addition, inform

the jury that they are the exclusive judges of all questions of fact.

Section 3062, O. S. 1931, provides:

"On the trial of an indictment or information, questions of law are to be decided by the court, and the questions of fact are to be decided by the jury; and, although the jury have the power to find a general verdict, which includes questions of law as well as of fact, they are bound, nevertheless, to receive the law which is laid down as such by the court."

The defendant was accorded a fair and impartial trial; the court properly instructed the jury as to the law applicable to the facts. There are no errors in the record warranting a reversal.

The judgment is affirmed.

DOYLE, J., concurs. EDWARDS, J., not participating.