CHARLES DREW v. STATE.

No. A-9140.   Feb. 26, 1937.
(65 Pac. [2d] 549.)

Robert N. Dunn, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, J. Appellant, Charles Drew, was convicted in the district court of Jefferson county under Penal Code, O. S. 1931, § 1931, upon an information in substance charging that Charles Drew and Earl Young in said county on the 16th day of April, 1935, did unlawfully and burglariously break and enter the barn building of one J. W. Wallace, in which building was personal property belonging to said J. W. Wallace, with the felonious intent to take and steal said personal property and deprive the owner thereof.

Upon his separate trial, the jury by their verdict fixed his punishment at two years' imprisonment in the state penitentiary. His motion for a new trial was overruled, and from the judgment rendered on the verdict he appeals.

The only assignments of error presented on the record are in substance that the verdict was contrary to the law and the evidence, and that the court erred in refusing to direct a verdict of acquittal, for the reason that the accomplice's testimony was not corroborated by other evidence tending to connect the defendant with the commission of the offense.

The evidence shows that J. W. Wallace lived one-half mile west of Hastings; while he with his family were attending a play at the Hastings' school house on the night of April 16th, 1935, his barn was entered and about 40 bushels of Texas Red oats were taken from the grain bin; that he had previously used the grain bin to keep cotton seed in, and 2 or 3 bushels of cotton seed were scattered over the floor of the bin when the oats were put in. Before leaving home that evening, he had fastened the barn door with a locked chain, which he found broken.

John Milburn testified that he was in the feed business in the city of Duncan, that on the morning of April

18, two young fellows sold him 34 bushels of oats in sacks, for which he paid the defendant Drew 56 cents a bushel, and to save resacking them, he gave them other sacks, that a few days later he sold the oats to one of his customers who did not want to pay extra for the sacks, so they dumped them into his trailer, and it appearing some cotton seed was mixed with the oats, he allowed his customer a little off on that account.

Marshall Thomas testified that on the 18th day of April, 1935, he was working for Mr. Milburn of the Farmer's Produce Company in Duncan and opened up the place that morning; that Charles Drew, the defendant, was there and said he had oats to sell. Mr. Milburn was away and Drew left and came back and another boy with him about half past seven. Mr. Milburn was there then and bought 17 or 18 sacks of oats from the defendant. That he had known Charles Drew for about seventeen years. He identified Earl Williams as the boy that was with the defendant.

Earl Williams testified that he lived north of Hastings and was in Hastings the night of the play. Charles Drew and Earl Young came by and the defendant Drew asked him if he wanted to go with them to get some oats, and he got into their car; they drove over to Mr. Wallace's place, and went to the barn, the defendant broke the chain on the barn door, and they entered, sacked the oats, and took them out near the road side, then they returned to Hastings and were there about an hour before the play ended, then Earl Young took the defendant's parents home from the play, when he returned they drove back to where they left the oats, loaded them into the car, and hauled them to the defendant's place. A night or two afterwards they loaded them into a car and he was with the defendant when he drove to Duncan and there sold the oats;

that the defendant gave him $4 out of the money received; that Mr. Drew's car was used in the transportation of the oats.

Earl Young testified that he had known Charles Drew for about four years, and had been working for the defendant and the defendant's father for some time; that in their car he drove the defendant's parents to the schoolhouse in Hastings that night, then went down town and met Charles Drew in a pool hall, and they went out and got in the car and drove out in the country to the defendant's home and there got some sacks, then drove back to town, and there picked up Earl Williams. The three then drove out to Wallace's place to steal some oats. The defendant broke the chain on the barn door with a bar, then they went in and filled the sacks and carried the oats to the roadside. When the play was over, he drove Mr. and Mrs. Drew home, then he returned to Hastings, and with the defendant and Earl Williams went out and loaded the sacks into the car and hauled them to the defendant's home. Two or three days later the defendant took these oats and said he sold them, and gave him $3.50 or $4 of the sale money, that the defendant did not have any other feed or seed oats at his place at that time.

On cross-examination he stated that he had received a five-year suspended sentence in this case, but did not know why he was not sent to the penitentiary.

The defendant did not testify, but offered the testimony of five witnesses tending to establish an alibi, in that he was in a pool hall in Hastings that night between the hours of 7 and 9 o'clock.

Aaron Stanley testified that he lives three miles north of Hastings, across the road from the defendant's place and runs a combine; that last year he cut 12 acres of oats

for the defendant; that made about 20 bushels to the acre.

C. E. Drew, father of the defendant, testified that last year his son raised about 250 bushels of oats; that a few days before the night of the play at Hastings he visited his son's place and he would estimate that his son had 75 bushels of oats sacked in the granary; that with his wife he visited the play that night, Earl Young driving their car, and arrived in Hastings fifteen minutes to 7.

Mrs. Ruth Drew, wife of the defendant, testified that they had 12 or 15 acres in oats last year, that made about 250 bushels; that about the time Wallace's barn was entered they had left about 80 bushels of these oats; that they needed a water barrel and were unable to get one at Temple or Hastings, so her husband went to Duncan to get a barrel, and took with him several sacks of their oats to sell; that no car came to their place the night of the play, and when her husband came home that night he told her he walked out from Hastings.

On cross-examination she admitted that after her husband was arrested she talked to Mr. Wallace and offered to settle with him, saying she would rather give him the money than give it to some lawyer.

When the state rested, and again at the close of all the testimony, counsel for the defendant moved the court to direct the jury to return a verdict of not guilty, for. the reason that the evidence is insufficient to warrant a conviction, and the further reason that the accomplice's testimony tending to connect the defendant with the commission of the crime charged is not corroborated. Exceptions were taken to the overruling of said motions.

Neither in the petition in error nor the brief filed is any complaint made of any ruling of the trial court in

the admission or rejection of testimony, or of the instructions.

It was urged below and is insisted here that the evidence was insufficient to warrant the verdict, and that there was not sufficient corroboration tending to connect this defendant with the burglary charged or the larceny of the oats.

As to the effect to be given in prosecutions for burglary to proof of possession of property stolen at the time of the burglary in connection with the breaking and entering, it has been held by this court that the fact of possession of property recently stolen, if such possession is unexplained, is a circumstance tending to show that the defendant is guilty of the burglary. In such a case, testimony which tends to prove the commission of larceny also tends to prove the commission of the burglary; but the evidence of unexplained possession of recently stolen property would have no more force and weight in such a case than in a case of larceny. In either, it is but a circumstance tending to show the guilt of the defendant, if established as a fact by the evidence beyond a reasonable doubt.

The rule which is recognized by the great weight of authority may be stated as follows: There is no presumption of guilt of burglary attaching to the mere possession of the stolen property by the defendant, but such fact, if the alleged crime be of recent occurrence, has a tendency to prove his guilt, and if there be other proved circumstances tending to connect him with the commission of the offense, the fact of possession thus aided will sustain a conviction. Graham v. State, 12 Okla. Cr. 84, 152 Pac. 136; Bradley v. State, 18 Okla. Cr. 503, 196 Pac. 730; Chrisman v. State, 22 Okla. Cr. 52, 209 Pac. 656;

Morrow v. State, 23 Okla. Cr. 98, 212 Pac. 1008; Dickson v. State, 26 Okla. Cr. 403, 224 Pac. 723; Newman v. State, 35 Okla. Cr. 296, 250 Pac. 554; Hart v. State, 57 Okla. Cr. 372, 48 Pac. (2d) 337.

In Ruling Case Law, vol. 1, p. 440, § 34, the text is:

"It is always competent, as bearing on the question of the defendant's guilt, to show that property stolen from the premises laid in the indictment was recently in the possession of the defendant, or of some third person who is shown to have been concerned in the burglary, or who could have obtained possession of it only from the defendant, provided it is identified with reasonable certainty, and provided that the burglary and the larceny are shown to have been parts of the same transaction. When this proof has been made the defendant has the corresponding right to explain such possession in order to rebut the unfavorable inference arising therefrom. It has not infrequently been said that, on a trial for burglary, proof of recent possession of property taken from the premises at the time of the burglary raises a presumption of the defendant's guilt, by which, however, is only meant that such possession, when established, is a fact from which the defendant's guilt may be inferred, and not that any burden of proof is thereby cast on the defendant. In other words, it is a circumstance which should be left to the jury, with instructions to give it such weight as they think it entitled to, when considered in connection with all the other evidence, in determining the guilt or innocence of the defendant, and if he fails to give a satisfactory account of his possession, the jury are at liberty to treat the absence of a satisfactory account as a fact in proof of his participation in the offense. Such evidence in the jurors' minds is strong or weak according to the character of the property, the nature of the possession, and its proximity to the time of the theft."

Whenever upon appeal it is contended that the conviction was had upon the uncorroborated testimony of an

accomplice, it is equivalent to a declaration that the verdict is contrary to the law and the evidence, and this is always a legal question. The witnesses Earl Williams and Earl Young were accomplices.

Under the statute (section 3071), a conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the testimony of the accomplice must be corroborated by such evidence as in itself, and without the aid of the testimony of the accomplice, tends to in some degree connect the defendant with the commission of the offense.

If two or more accomplices testify, the same corroboration is required as if there be but one; an accomplice can neither corroborate himself nor another accomplice. Cudjoe v. State, 12 Okla. Cr. 246, 154 Pac. 500, L. R. A. 1916F, 1251.

In the case of McGill v. State, 6 Okla. Cr. 512, 120 Pac. 297, this court held:

"If there is evidence which corroborates an accomplice and conduces to connect the defendant with the commission of the crime, its sufficiency is for the jury to determine."

In Moody v. State, 13 Okla. Cr. 327, 164 Pac. 676, this court held:

"Evidence corroborating an accomplice and tending to connect the defendant with the commission of the crime need not be direct, but may be circumstantial only."

Held further:

"It is not essential that the corroborating evidence shall cover every material point testified to by the accomplice, or be sufficient alone to warrant a verdict of guilty.

If the accomplice is corroborated as to some material fact or facts by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all. Such corroborating evidence, however, must show more than the mere commission of the offense or the circumstances thereof."

To the same effect are the holdings in each of the following cases: Winfield v. State, 18 Okla. Cr. 257, 191 Pac. 609; Collins v. State, 28 Okla. Cr. 45, 228 Pac. 993; Alvarado v. State, 38 Okla. Cr. 360, 261 Pac. 983; Smith v. State, 40 Okla. Cr. 88, 267 Pac. 283.

Independent of the testimony of the witnesses Williams and Young, connecting the defendant with the commission of the crime, the evidence shows facts and circumstances which, when considered together, tend also to connect the defendant with the crime charged.

When there is such corroboration, its sufficiency is for the jury, and this court will not interfere with the finding of the jury, where there is credible evidence to sustain the verdict.

It follows from what has been said that the court did not err in overruling the motions for a directed verdict.

Upon the whole case it appears that the defendant had a fair and impartial trial. Finding no prejudicial error in the record, the judgment of the trial court is affirmed.

DAVENPORT, P. J., and BAREFOOT, J., concur.