## GEORGE LIVINGSTON v. STATE.

No. A-4658.   Opinion Filed Feb. 23, 1925.
(233 Pac. 235.)

(Syllabus.)

**Evidence—Essentials of Corroboration of Accomplice—Robbery.** Where a witness for the state admits that he participated in the robbery of a bank, and implicates the defendant, his testimony is not sufficiently corroborated by merely showing that the defendant was near the scene of the robbery. The corroboration of an accomplice must show more than the mere commission of the offense. It must show some fact or circumstance implicating the accused in the perpetration of the crime.

Appeal from District Court, Beckham County; T. P. Clay, Judge.

George Livingston was convicted of robbery, and he appeals. Reversed and remanded.

Tracy & Minton, for plaintiff in error.

The Attorney General and G. B. Fulton, Asst. Atty. Gen., for the State.

BESSEY, P. J.   George Livingston, plaintiff in error, here denominated the defendant, was convicted of conjoint robbery, with his punishment fixed by the jury at confinement in the penitentiary for a term of 10 years.

Eliminating many of the details of the preparations leading up to this robbery, the evidence on the part of the state shows that on August 22, 1922, Walter Woods and Doyce Bohannon, aged respectively 17 and 16 years, at about 12:20 or 12:30 o'clock, entered the Beckham County National Bank at Sayre through a rear door, with their faces partly covered with cloth masks, and, by means of threats, subdued the employes in charge, and forcibly took and carried away approximately $2,000 in currency and coin. These boys then, without being recognized by any one, made their escape through the rear entrance of the

bank into some weeds and a plum thicket, and were not seen for some time thereafter.

For some days the identity of all the persons implicated in this bank robbery remained a profound mystery. The 17-year old boy, Walter Woods, lived in Sayre with his mother, who had been separated from her husband for a number of years. The mother, while straightening Walter's bed a few days after the robbery, found hidden under the mattress $641 in coin and currency. This good woman immediately interrogated her son as to how and where he had obtained this money, and the boy finally confessed to her that it was a part of the loot taken from the bank. She thereupon took him to the bank, and made him return the money to the bank officials, and then turned him over to the officers. To them he made a confession implicating this defendant, who up to this time had not been suspected of having taken part in the affair.

At the trial this boy, Walter Woods, testified that Doyce Bohannon and he were school mates; that he, Bohannon, and this defendant, George Livingston, had a number of times before the robbery conferred together and laid the plans to commit this robbery; that, pursuant to the plans finally agreed upon, Woods and Bohannon went into the bank through a rear door, shortly after noon; that they each wore blue overalls and black hats, with their faces covered with cloth masks, and were each armed with Colt revolvers; that Bohannon covered the cashier with his gun, and made him throw up his hands and kneel down next to the window, so as not to be seen from the outside; that he (Woods) covered the assistant cashier, the only other person in the bank, with his gun and compelled him to stoop down and go to the vault and help him put into a sack which the boys had brought with them approximately $2,000 in currency and coin; that they then locked the two men in the vault, and made their escape through the rear door into some weeds and plum bushes

near the rear of the bank, to a point about 75 yards from the rear of the bank, where they entered a waiting Dodge car driven by George Livingston, this defendant; that he and Bohannon crouched down between the front and rear seats and covered themselves with a blanket while the car was being driven to the home of the defendant; that, while in this position, he and Bohannon took out of the sack such currency as they could and had it on their persons; that, when they arrived at the home of Livingston, they divided equally what money remained in the sack, Livingston receiving $249; that Livingston then furnished Woods and Bohannon with a horse, which they rode away into some brush or a thicket not far away, and there discarded the outer clothes which they had worn during the robbery, and that they then walked back into Sayre.

Woods further testtified that Sunday night, before the robbery on Monday, they spent the night at Livingston's in a garret room, and that Livingston carried their breakfast to them in this room; that at about 11:30 Sunday night they drove with the defendant and a Mr. Burns from Sayre to a place near the river bridge, where they got a sack of clothes which they had previously hidden there.

On cross-examination Woods testified that his attorney had informed him that, if he would testify to the facts, as outlined in his testimony, he (Woods) would receive a suspended sentence; and that he would not have so testified except for this understanding.

Neither Burns nor Bohannon testified and nothing appears in the record explanatory of this omission. In defendant's motion for a new trial, a supporting affidavit by Burns was attached, in which he states that the portion of Wood's testimony relative to his going to the place near the river bridge where the clothes were said to have been hidden was false; that he never at any time saw Walter Woods or Doyce Bohannon in a car with George

Livingston, nor ever at any time drove a car in which any of them rode with him.

We have carefully examined this entire record for some evidence corroborating the accomplice Woods, of the kind and character defined by section 2701, Comp. Stat. 1921, which reads as follows:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

The state produced no witness who saw the defendant with this self-confessed robber or his companion in crime at any time during the different steps of the preparation of the robbery, or afterwards. No witness assumed to have seen the defendant in flight with the robbers after its commission. Mr. Burns, the only person mentioned by the accomplice as having been with or seen them together at any time before or after the robbery, was available but was not called by the state.

The state did show that Livingston was in Sayre with a Dodge car at or about 12 o'clock, noon, and that he left town alone, passing along the road near the weed patch and plum thicket at the rear of the bank, but that was the extent of the testimony corroborating the accomplice Woods.

On cross-examination the defendant admitted that he was 21 years of age and unmarried. It was further developed that he was what is sometimes termed a social "rounder;" that he sometimes indulged in the use of intoxicating liquor, and was a number of times a member of joy-riding parties with other men and women; and that, while in the army, he was once incarcerated for absence without leave.

Without the testimony of the accomplice Woods, the presence of this defendant in Sayre, at or near the time of the robbery, would not, of itself, raise even a suspicion against him. Indeed, for several days he was not suspected—not until the Woods boy made his confession implicating him.

The defendant established a perfect alibi by 10 disinterested witnesses at 12:20 to 12:30 o'clock, fixed by the blowing of the roundhouse whistle. These witnesses were all permanent residents of Sayre and vicinity, whose evidence the state did not attempt to impeach. But disregarding the evidence establishing an alibi, and relying wholly upon the evidence of the state, the defendant's mere presence in Sayre with a Dodge car, at or near the time of the robbery, is not sufficient corroboration of the accomplice, as defined by our statute. The story of the Woods boy may be true, or partly true, but neither Burns nor any other witness was produced to corroborate a single incident of the elaborate preparations made for the robbery or the incidents following, as detailed by the accomplice.

It would be dangerous and contrary to a well-established principle of law to permit this conviction to stand without some more substantial corroboration than appears in the record. The judgment of the trial court is therefore reversed, and the cause remanded for a new trial.

DOYLE and EDWARDS, JJ., concur.