LYMAN BOGGESS v. STATE.

No. A-8026.    Oct. 30, 1931.
(4 Pac. [2d] 697.)

Tom L. Ruble, E. S. Collier, and Merle G. Smith, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, P, J.   The plaintiff in error, hereinafter referred to as the defendant, was by information jointly charged with Paul Powers, with the crime of murder; was tried separately and convicted of manslaughter in the first degree, and sentenced to be imprisoned in the state penitentiary at McAlester for a period of 25 years. Motion for a new trial was filed, considered, and overruled, and the defendant appeals.

The facts disclosed by the record show that Paul Powers, a witness called to testify on behalf of the state, who had been jointly charged with defendant of killing James Townsend, had been convicted of manslaughter in the first degree and sentenced to serve 25 years in the state penitentiary. About a year after Paul Powers had been confined in the state penitentiary, he charged the defendant in this case with being guilty of murdering James Townsend, the party Powers had been convicted of manslaughter in the first degree of killing.

Powers testified that prior to October 27, 1925, he had been working for James Townsend; that early in September, 1925, the defendant came to where Powers was picking cotton for Townsend; he had never met the defendant before; it was further shown that during the conversation Powers had asked the defendant with reference to Townsend paying him, as he had had difficulty in getting Townsend to settle with him for work he and his brother had been doing; Paul Powers claims that the defendant had a pistol with him, and they had a talk about the pistol. The record is voluminous, and it is not deemed necessary to set out all the evidence given by Powers as to the conversation had between Powers and the defendant.

On the 25th day of October, 1925, the record discloses that Paul Powers and his brother Rufus Powers went to the home of the defendant and told him they were ready to work for him and got some kind of a conveyance and went to the Townsend home and hauled their trunk to defendant's place and began picking cotton for the defendant Monday morning, the 26th day of October, 1925.

Paul Powers' testimony further tends to show that the defendant had told him that Townsend was pretty bad

about not paying parties who worked for him; Powers contends that on Sunday, after he went to defendant's home, he had a conversation with the defendant with reference to whether or not Townsend would pay Powers for his work, and also discussed the question of the gun the defendant had sold Powers. It is further disclosed that the witness Paul Powers got up early Monday morning, ate his breakfast, got a horse from the defendant and rode down to the Townsend place, learned that he was not at home, and came back and picked cotton the remainder of the day. The defendant Monday morning said he was going to town, and—

"I told him we were running short of shells, and he said he would get a box or two. I gave him a check for the pistol to show that I had bought it from him, so in case I had any trouble he could cash the check to keep him in the clear. Paul Powers further stated, in substance, that he spent Monday night at defendant's home; on Tuesday morning, October 27, 1925, we got up at sun-up and went down to the barn and did a few chores, drank some more, and defendant told me he would give me a saddle horse and the gun again and I could go back to see Townsend that day as Townsend would be at home, and told me to be sure and collect the money, and not to let Townsend run over me like he had been doing the other boys that had been working for him. I got one of defendant's horses and took the gun the defendant had sold me and went to the Townsend place, returned to the defendant's place about noon, and told the defendant, his wife, and Rufus Powers that I had shot Jim Townsend."

Paul Powers contends that after he went to the defendant's home on October 25, 1925, that he and the defendant did some target shooting with the pistol that he afterwards killed Jim Townsend with, and states that they practiced shooting and learned to sight, as he was under the impression he might have to shoot quick later

on; that the defendant told him when he was pulling the gun to be sure and have his finger on the trigger.

The witness Paul Powers further states that on the day of the killing he went to the Townsend home and was advised that Townsend was in the field; he rode over to the field, about two miles, met Townsend, and told him he had come to settle up, and Townsend began to argue with him about a goat Townsend claimed his brother had run over and killed; Powers said he told Townsend he would pay for the goat; they argued for some time and Townsend said he would have to sell some cotton before he could pay him.

"I argued around with him all morning; I hated to go back without collecting my pay, for the main reason I knew Boggess would kid me about it; he would say I was yellow and joke me about it, and I just hated to go back there; I was drunk too, and did not want to go back without the money, and I just made up my mind rather than go back and have Lyman kid me about it I would just go ahead and shoot him."

Powers further stated he went back to defendant's home and told him what he had done:

"He thought, I guess, that I was going to run, and he went to talking to me. He said to stay there, I will sell my place or do anything to get you out of this trouble."

Witness then made further statements with reference to what the defendant had said about a still.

Paul Powers, when he was on trial, testified positively that he shot Jim Townsend in self-defense, and that the defendant in this case had nothing to do with it. Several other times he made the same statement, and no charge was made against the defendant in this case until after Paul Powers had been in the penitentiary some

time. Some statements of Powers' brother were introduced as to what had taken place between Paul Powers and the defendant Boggess on Monday morning, the day previous to the killing, and in a way attempt to repeat statements made by Boggess. The witness Paul Powers has made many different statements indicating he had no regard for the truth of his statements. He admits he shot Jim Townsend. The defendant admits he sold Powers a pistol and admits that the Powers boys came to his house on Sunday before the killing on Tuesday for the purpose of assisting him in picking cotton; he had previously met Paul Powers and told him when he got through working at Townsend's place he would like to have him assist him in gathering his cotton; he denied he had any ill feeling against the deceased; he denies absolutely there was anything said by him to Paul Powers, or any one else, that Paul Powers should make Townsend pay, and defendant denies he had any knowledge whatever that Powers had any intention of doing Townsend any harm, or shooting him.

The record discloses that two parties stayed at the Boggess home Monday night, and were there Tuesday morning until Paul Powers left for the Townsend home, and they state there was no conversation had between Paul Powers and Boggess with reference to what Powers should do to Townsend. There is a direct conflict in the testimony of Powers and the defendant as to what took place from the time they first met up until the last trial of Boggess, except they all admit the Powers boys were picking cotton for Townsend and afterwards came to the Boggess home and began to work for the defendant, and other matters which are not necessary to detail in this opinion. Up until the time Boggess was charged with Paul Powers in the commission of this crime, there was no testi-

mony brought out tending to show any drinking of whisky at the Boggess home, or that the defendant was intoxicated. There is a complete change in the testimony of the prosecuting witness Paul Powers in this case and the testimony given by him in the trial of his own case. Witness Paul Powers admits on the stand that he had sworn falsely in the previous trials.

The defendant has assigned several errors alleged to have been committed by the trial court possessing sufficient merit as he believes to warrant a reversal of this case. The first assignment of error is as follows:

"The court erred in overruling the motion of plaintiff in error for a new trial."

This is the only error it is deemed necessary to consider, as the motion for a new trial covers all the other assignments. The defendant in his motion for a new trial urges that the verdict of the jury is not sustained by the evidence; that the verdict of the jury is contrary to law; and that the court erred in refusing the plaintiff's request for an instructed verdict in his favor at the close of all the testimony in the case. In his argument, the defendant insists that the witness Paul Powers in this case testified that he did not act in self-defense; that in his own case, and a former trial of this defendant, Paul Powers stated he believed he was acting in self-defense at the time he fired the shot. It is further urged by the defendant that Paul Powers, by his own statement, is an accomplice. It is further urged that Paul Powers is not corroborated by any competent testimony showing that the defendant is guilty of any public offense.

In every criminal prosecution, the state must prove the corpus delicti; that is, that an offense has been committed, and, second, that the crime was committed by the

accused. Green v. State, 7 Okla. Cr. 194, 122 Pac. 1108; Marston v. State, 9 Okla. Cr. 275, 131 Pac. 716.

Section 2701, Comp. St. 1921, is as follows:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

The testimony of Paul Powers and his brother is successfully contradicted by disinterested witnesses, and Paul Powers admits that he had sworn falsely in his trial and a former trial of the defendant. Paul Powers in his testimony admits that he has ill will and animosity toward the defendant for the reason, as he says, the defendant had not assisted him in the trial of his case as he had agreed to do. The defendant denies he ever talked to Powers about shooting Townsend, and denies he ever made Paul Powers any promise to aid him in his trial. The record shows he did not employ counsel for Paul Powers when he was on trial. Considering the contradictory and improbable statements of Paul Powers and his brother, and the character of the testimony given by them, and in view of the fact that the defendant up to the time this charge was made against him by Paul Powers is shown to be a man of good character, it is necessary to carefully consider all the testimony in order to arrive at a conclusion as to whether or not there is any competent evidence which in any way tends to corroborate, and does corroborate, the testimony of the state witnesses as to the defendant aiding, abetting, or in any way assisting in the commission of the crime.

An accomplice has been defined by this court as one culpably implicated in the commission of the crime of

which the defendant is accused; in other words, an associate, one who knowingly and voluntarily co-operates, aids, or assists in the commission of the crime. Hendrix v. State, 8 Okla. Cr. 530, 129 Pac. 78, 43 L. R. A. (N. S.) 546; McKinney v. State, 20 Okla. Cr. 134, 201 Pac. 673, 674; Sipes v. State, 36 Okla. Cr. 1, 251 Pac. 511.

A defendant cannot be convicted upon the uncorroborated testimony of an accomplice. The corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof. Kirk v. State, 10 Okla. Cr. 281, 135 Pac. 1156; Gillam v. State, 10 Okla. Cr. 176, 135 Pac. 441; Boyle v. State, 27 Okla. Cr. 196, 226 Pac. 389; Finchum v. State, 40 Okla. Cr. 192, 267 Pac. 688; Wever v. State, 22 Okla. Cr. 414, 211 Pac. 1062.

In the testimony of Paul Powers, he charges the defendant in this case with aiding, abetting and assisting him in the commission of the crime of killing Jim Townsend. In another portion of his testimony he states, "I argued around with Townsend all morning, and I hated to go back without collecting my pay, for the reason that Boggess would kid me about it. I did not want to go back without the money, and I just made up my mind rather than go back and have Boggess kid me I would just go ahead and shoot him." This witness shows by his testimony that Boggess had nothing to do with his going to Townsend to collect his money, and that he did not intend when he went over there to shoot Townsend.

From a careful reading of the record, we conclude that the evidence is insufficient to warrant a conviction or sustain the verdict, because there is not sufficient corroboration of the accomplice.

The judgment of the trial court is reversed.

EDWARDS and CHAPPELL, JJ., concur.