# ERNEST HANKINS v. STATE.

No. A-9182.   Aug. 13, 1937.
(71 Pac. 2d 119.)

Finney & Cook, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DAVENPORT, P. J.   The plaintiff in error, the defendant in the trial court, was by information charged, with Carl Pruitt, with the larceny of two mules; was tried separately, convicted, and sentenced to serve five years in the penitentiary, the record properly saved; and by case-made with petition in error attached has brought his case to this court.

The record contains over 300 pages.   The substance of the testimony is that the defendant Ernest Hankins lived in and near the town of Valliant; that A. F. Calfee also lived in the neighborhood of Valliant; the defendant is a brother-in-law of A. J. Whitfield, who was the owner

of a large farm and pasture lands south and west of Valliant, in Choctaw county, Okla.; that A. J. Whitfield moved to Sapulpa, and the defendant in this case had been supervising and looking after the farm and pasture lands; that during the year 1934 Carl Pruitt had rented the use of the pasture to graze fifty or more head of cattle jointly with the defendant's cattle and continued to keep them on the pasture until it got so dry it was necessary for the defendant to ask Carl to get some other place for his cattle, as the grass was drying up and there was no more grass than would be required for the stock the defendant had in the pasture.

During the same year, and for several years prior thereto, W. B. and J. C. Birmingham, colored, had occupied and cultivated the land on the Whitfield farm. On the 20th day of November, 1934, A. F. Calfee missed a pair of mules and began searching for them. The Birmingham negroes claimed they knew nothing about his mules, and knew nothing about what became of them; Mr. Calfee in searching for his mules claims that on the morning of the 20th of November, 1934, the defendant in this case drove by his place and on up to the Whitfield farm which he was supervising. Some time later the record shows that W. B. and J. C. Birmingham were arrested and put in jail; that the state officers went to the jail and interviewed them and they claimed to know nothing about the mules; one of the officers struck J. C. Birmingham a time or two, and finally told the other officers to get the cuffs and a board and he would make them tell the truth about the mules. The record shows that after this, charges were filed against the defendant and Carl Pruitt charging them with the larceny of the mules. The Birmingham negroes were used as witnesses against them.

The testimony of the negroes is in substance as follows: On Tuesday morning before the mules were taken that night, the defendant in this case came by the farm where they were living, and went with them across the field looking for some hogs, and during the time he was at the farm told one of these negroes to catch the mules that were there in the oat pasture and to take them to the gravel pit that night, designating the place they were to be taken; that it was raining that evening, but the negroes led the mules down to the gravel pit, and claimed that just before they reached the gravel pit the defendant drove up in his car and turned his car and went back to the gravel pit, and they delivered the mules to the gravel pit where Carl Pruitt and defendant were; that they helped load them in a pick-up and trailer and they were taken away by Carl Pruitt. No one was present when the mules were taken up by the negroes, and no one was present at the gravel pit according to the testimony of the negroes, except the negroes, Carl Pruitt, and the defendant. In the meantime Carl Pruitt had been convicted of a crime and was serving a term in the penitentiary.

The owner of the mules knew nothing of the defendant's connection with the larceny of the mules, and only claims to have seen the defendant on Tuesday before the mules were taken going toward the farm of his brother-in-law which he was supervising. Some of the witnesses for the state claim the defendant asked whose mules they were that were grazing along near where he passed and mentioned the fact of their being good mules. The witness A. F. Calfee, and one or two others, testified they went to the gravel pit and back-tracked the mules to the Whitfield farm, and testify that somewhere along between the

gravel pit and the farm there had been an automobile turned and seemingly went back toward the gravel pit.

All of the testimony agrees that it rained Tuesday night and some Wednesday, and some of the testimony also shows it had been raining on Sunday night. The witness Calfee testified to the car tracks he saw between the gravel pit and stated it looked like the tracks were made by the same kind of a casing the defendant was using on his car.

The defendant denies he was at the Whitfield farm on Tuesday, the 20th of November, 1934, as stated by the other witnesses, but states he was on a FERA project near Wright City, and other witnesses corroborated his statement that he was working on a FERA project on Tuesday, November 20, 1934, and the defendant also testified he assisted his sister-in-law in catching a bus from Valliant to Paris, Tex., the evening of the 20th, and as shown by his wife he was at home after they drove home from Valliant and did not leave their home that night.

Page after page of testimony is introduced in the record to show who worked at the FERA project, and the pay rolls of the time keeper were introduced in evidence by the state, in rebuttal, to contradict the testimony of the defendant as to where he was working, and when he was working.

The testimony of the Birmingham negroes show the part they took in the stealing of the mules and the efforts made to connect the defendant with the larceny of the mules, which Carl Pruitt hauled away and sold. It is not deemed necessary to go into detail and state at length the testimony in full. The foregoing is the substance of

the testimony, and all that it is deemed necessary to set out to arrive at an opinion in this case.

The defendant in his petition in error has assigned 16 errors alleged to have been committed by the trial court. The first assignment is:

"Said court erred in overruling plaintiff in error's motion for a new trial. To which ruling of the court the plaintiff in error saved his exceptions."

This assignment is the only error it is deemed necessary to consider, as the motion for a new trial covers all the other errors. The defendant in his motion for a new trial urges that the verdict of the jury is not sustained by the evidence; that the court erred in overruling defendant's demurrer to the evidence introduced; the court erred in overruling the defendant's motion for an instructed verdict at the close of the testimony; error of the court in refusing to give defendant's requested instructions, 1, 2, 3, and 4; that the verdict is contrary to the law and not sustained by the evidence. And it is further urged by the defendant that the witnesses W. B. and J. C. Birmingham are not corroborated by any competent testimony showing that the defendant is guilty of any public offense.

The question to be determined by this court is: Is the testimony of the Birmingham negroes sufficiently corroborated by other witnesses to sustain a conviction of the defendant? The Birmingham witnesses admit they took the mules from the field on the Whitfield place and tied them up, and after dark and while it was raining took them to the gravel pit where Carl Pruitt was, and helped load them into a pick-up and trailer; they claim the defendant was present.

Section 3071, O. S. 1931, 22 Okla. St. Ann. § 742, is as follows:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the coroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

The statute explicitly states what is necessary to be done in order to sustain a conviction on the testimony of accomplices. The court is of the opinion that the testimony of the witnesses W. B. and J. C. Birmingham is that of accomplices, and if this conviction is allowed to stand there must be found in this record evidence independent of those two witnesses which tends to connect the defendant with the commission of the offense. The state asserts that the evidence is sufficient. The only evidence tending to connect the defendant with this case is the evidence of the witnesses who claim to have examined the tracks between the gravel pit and the Whitfield farm and stated they looked like tracks made by the defendant's car. It is not to be lost sight of that all the witnesses admit they did not examine these tracks until several days after the mules had been taken, and they further admit it rained on Tuesday night, the night the mules were taken, and some of the witnesses state it rained on Wednesday, which testimony, if true as to the rain, would to some extent blur or obliterate the tracks.

It is true the testimony of these witnesses as to the car tracks is such as would create a suspicion of the defendant being connected with the taking of the mules, but no more as we view it. The fact defendant was supervising the farm upon which the Birmingham negroes were

living and had been cultivating the land is not sufficient to connect the defendant with the taking of the mules. It was his duty to look after the farm and he had a right to go to and from the farm at any time he chose to make the trip.

It is not sufficient corroboration to prove the crime was committed in the manner described by the accomplices. Their testimony must be corroborated as to the particular defendant, and it is not sufficient for this purpose merely to connect the defendant with the accomplices, or other persons participating in the crime, but the evidence must tend to connect him with the crime itself, and not simply with its perpetrators, and corroborating evidence may be sufficient although of itself slight, but it is not sufficient if it merely tends to raise a suspicion of guilt.

In Cornett v. State, 42 Okla. Cr. 93, 274 Pac. 676, this court in the first paragraph of the syllabus stated:

"A conviction cannot be sustained unless there is proof of substantial facts tending to connect the defendant with the commission of the offense aside from and without the aid of the accomplice's testimony."

In Wever v. State, 22 Okla. Cr. 414, 211 Pac. 1062, this court cited with approval the case of Kirk v. State, 10 Okla. Cr. 281, 135 Pac. 1156, in which it was stated:

"There cannot be a conviction unless there is proof of substantial facts tending to connect the defendant with the commission of the offense aside from and without the aid of the accomplice testimony."

In Jolliffee v. State, 21 Okla. Cr. 278, 207 Pac. 454, the court reaffirmed the doctrine that a party cannot be convicted on uncorroborated testimony of accomplices. Citing Thompson v. State, 9 Okla. Cr. 525, 132 Pac. 695.

In Holmes et al. v. State, 52 Okla. Cr. 406, 5 Pac. (2d) 770, 771, in the body of the opinion this court said:

"In addition to the settled rule based upon the statute, that there cannot be a conviction unless there is proof of substantial facts tending to connect the defendant with the commission of the offense aside from and without the aid of the accomplice's testimony, it also frequently has been said that it is not sufficient corroboration merely to connect the defendant with the claimed accomplice in the crime. The evidence, independent of the testimony of the accomplice, must tend to connect the defendant with the crime itself, and not simply with the perpetrator. Flynn v. State, 10 Okla. Cr. 41, 133 Pac. 1133; Kirk v. State, 10 Okla. Cr. 281, 135 Pac. 1156; McKinney v. State, 20 Okla. Cr. 134, 201 Pac. 673; Powell v. State, 21 Okla. Cr. 332, 207 Pac. 570; Wever v. State, 22 Okla. Cr. 414, 211 Pac. 1062; Livingston v. State, 29 Okla. Cr. 247, 233 Pac. 235; Key v. State, 38 Okla. Cr. 169, 259 Pac. 659."

In Rogers v. State, 57 Okla. Cr. 294, 48 Pac. (2d) 344, 346, this court in the body of the opinion stated:

"The rule of law forbidding a conviction upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense is, under the statute (section 3071, St. 1931), positive and peremptory.

" 'The corroborative evidence must of itself and without the aid of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the offense; and independent evidence merely consistent with the main story is not sufficient corroboration if it requires any part of the accomplice's testimony to make it tend to connect the defendant with the crime.' "

" 'The corroborating evidence may be sufficient although by itself slight, but it is not sufficient if it merely tends to raise a suspicion of guilt.' 1 Enc. of Ev. pp. 104, 105, 106, and 108, and cases cited."

260

We fail to find in this record any evidence which we deem to be sufficient for the purpose of corroborating the Birmingham witnesses. True there is some evidence which would create a suspicion of the defendant's guilt, but no more as we view it.

There are many other questions raised by the defendant and discussed in his brief, and many errors alleged to have been committed in the introduction and rejection of testimony, some of which possess merit and were prejudicial to the rights of the defendant; but the view we take of this record it is not deemed necessary to extend this opinion further by discussing each of them separately; suffice it to say that the testimony in the record is insufficient to corroborate the admitted accomplices.

For the reasons herein stated, the judgment of the trial court is reversed.

DOYLE, J., and BAREFOOT, J., concur.