## LAWRENCE HOWERTON v. STATE.

No. A-9414. March 24, 1939.
(88 P. 2d 904.)

Falkenstine & Fisher, of Watonga, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Nelson Crow, Co. Atty., of Watonga, for the State.

BAREFOOT, J. Defendant was charged by information in the district court of Blaine county with the larceny of domestic fowls; was tried, convicted, and sentenced to serve a term of 60 days in jail, and pay a fine of $50.

It is contended that the evidence of the accomplices, who testified against defendant, is not sufficiently corroborated, and this constitutes the only error alleged in the case.

The evidence on behalf of the state revealed that defendant, Lawrence Howerton, and Pearl McDonald, Arthur Hoskins, and Ellsworth Wilson, were boys living in, or near, the town of Longdale, in Blaine county. They were from 15 to 18 years of age. That on the night of the 6th of May, 1936, Mrs. Irma Barnes, who lived northeast of Longdale, lost about two dozen chickens. The defendant and the other three boys were arrested and placed in jail charged with the theft of the same. Defendant was bound over to the district court, and the other three boys were used as witnesses for the state, upon a promise by the county attorney, they would not be prosecuted if they would make a statement and testify against the defendant, which they did.

The testimony of each of these three boys was that they were up in the barn at Ellsworth Wilson's home on

the night of May 6, 1936. That they left the barn and that one boy, Harvey McDonald, who was also there, said he was sick and did not go with them. That they went to the home of Irma Barnes, and there stole about two dozen chickens. That immediately after stealing the chickens they pulled off the heads of some of them and threw them away. One of the witnesses, Pearl McDonald, stated that they first took the chickens to Wilson's home, and then went to the home of John Jester, and there cleaned some of the chickens and cooked them, and that they all stayed there until sunup the next morning.

The only testimony in the record which in any way corroborates the three accomplices of defendant was the testimony of Otto Carpenter, a deputy sheriff, who testified that on the morning of the 7th of May, 1936, he made an investigation at the Barnes' home, and found the heads of some chickens, probably a dozen, somewhere near the Barnes home. And the testimony of Harvey McDonald, who testified for the state. On direct examination he stated he was at the barn at the Wilson home when the boys left. They did not tell him where they were going. He saw them climb down out of the barn. On cross-examination he stated the defendant said: "It was a pretty good night to get some chickens."

This is all the testimony offered by the state to in any way corroborate the testimony of the three accomplices, except proof that the chickens were stolen. O.S. 1931, § 3071, 22 Okla. St. Ann. § 742, provides:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

In construing the above statute, this court has, upon many occasions, discussed the sufficiency of the evidence

to corroborate an accomplice. In the following cases the evidence was held insufficient under the statute: Flynn v. State, 10 Okla. Cr. 41, 133 P. 1133; Thompson v. State, 9 Okla. Cr. 525, 132 P. 695; Head v. State, 9 Okla. Cr. 356, 131 P. 937, 44 L.R.A., N.S., 871; Key v. State, 38 Okla. Cr. 169, 259 P. 659; Finchum v. State, 40 Okla. Cr. 192, 267 P. 688; Henson v. State, 53 Okla. Cr. 139, 8 P. 2d 692; Wever v. State, 22 Okla. Cr. 414, 211 P. 1062; Rogers v. State, 57 Okla. Cr. 294, 48 P. 2d 344; Kirk v. State, 10 Okla. Cr. 281, 135 P. 1156.

In the following cases the evidence was held sufficient: Rice v. State, 60 Okla. Cr. 398, 64 P. 2d 1240; McLaughlin v. State, 18 Okla. Cr. 627, 197 P. 717; Hendrix v. State, 8 Okla. Cr. 530, 129 P. 78, 43 L.R.A. (N.S.) 546; Bond v. State, 54 Okla. Cr. 39, 14 P. 2d 425; Varner v. State, 42 Okla. Cr. 42, 274 P. 43; Moody v. State, 13 Okla. Cr. 327, 164 P. 676; Underwood v. State, 36 Okla. Cr. 21, 251 P. 507; Hendrix v. State, 22 Okla. Cr. 230, 210 P. 734.

In the case of Rogers v. State, above cited, it was said [57 Okla. Cr. 294, 48 P. 2d 346]:

" 'The corroborative evidence must of itself, and without the aid of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the offense; and independent evidence merely consistent with the main story is not sufficient corroboration if it requires any part of the accomplice's testimony to make it tend to connect the defendant with the crime.'

" 'There must be some evidence, which of itself, and without aid from the accomplice's testimony, tends to connect the defendant with the offense committed.'

" 'It is not sufficient corroboration to prove that the crime was committed in the manner described by the accomplice, but his testimony must be corroborated as to the particular defendant.'

" 'It is not sufficient for this purpose merely to connect the defendant with the accomplice, or other person participating in the crime, but evidence, independent of the testimony of the accomplice, must tend to connect him with the crime itself, and not simply with its perpetrators.'

" 'The corroborating evidence may be sufficient although by itself slight, but it is not sufficient if it merely tends to raise a suspicion of guilt.' 1 Enc. of Ev., pp. 104, 105, 106, and 108, and cases cited."

From these different cases it may be determined that in accordance with certain general well-defined propositions of law stated in the different opinions, each case stands or falls on the particular testimony of that case. In the case at bar the corroboration, if it could be called that, is of the very slightest. The state made hardly any effort to secure the testimony of any witness to corroborate the evidence of the accomplices, but relied almost wholly upon their testimony. The record reveals several instances where by a little effort testimony might have been secured that would have either corroborated the accomplices, or would have exonerated defendant. Certainly an effort should have been made to secure this evidence to the end that justice might prevail.

In the first place each of the accomplices was taken before the county attorney and promised complete immunity if he would testify for the state and against the defendant. Statements were taken in writing from him and he signed the same. The county attorney, of course, had a right to do this if he saw proper so to do. One of the accomplices, Pearl McDonald, testified that after the chickens were stolen they were taken to the home of John Jester, where they were dressed, and a part of them cooked the next morning. He testified that all four of the boys stayed all night there. He is corroborated in this statement by Arthur Hoskins. However, Ellsworth Wilson testifies he went home, and the other boys left to go to

Jester's place, but that he did not go with them but remained at his own home. He also testified that he remained at the car at the time the chickens were stolen and that it was a quarter of a mile distant. Pearl McDonald, on being recalled, testified that he did not stay at the car, but went with them at the time the chickens were stolen.

Some of the witnesses testified that both Mr. and Mrs. Jester were at their home when the chickens were cooked on the morning of the 7th of May. The defendant placed Mr. Jester on the stand and he testified that the boys did not come to his home on the night of the 6th of May, or any other time. That he was well acquainted with several of them. That no chickens were brought there by anyone, nor were any dressed or cooked there. He testified that the sheriff came to see him soon after the boys were arrested, and he told him the same as he now testifies.

Leon Hunt, his stepson, whom some of the accomplices testified to seeing, and who lived in close proximity to the Jester home, testified that he never saw any of the boys there at the time or at any other time. While this witness was on the stand, the county attorney, on cross-examination, asked him this question: "Q. The next morning, didn't you take some of these chickens and give them to a woman by the name of Lucile Shaw, and state that is where you got them? A. No, sir." This question would have been proper, had the county attorney afterwards produced the witness Lucile Shaw and she had substantiated what he said, but no effort was made to place her on the witness stand. While it was true that the court afterwards told the jury that this evidence was withdrawn from their consideration, and by reason thereof this would not alone be reversible error, yet it will at once be seen that it was damaging to defendant, especially in a close case like this.

We have carefully reviewed the record and it does not appear that there was sufficient corroboration of the three accomplices in this case, and especially in view of the testimony of Mr. Jester and Leon Hunt that these boys did not come to his home as they testified they did. It is not necessary that the corroborative evidence cover every material point in the accomplice's testimony, but it must be of some substantial fact or facts tending to connect defendant with the crime. It may even be proved by circumstantial evidence.

It may be that defendant was guilty of the crime charged, but under the law it was the duty of the state to corroborate the accomplices in the manner provided by law. This it failed to do.

For the reasons above stated, the judgment of the district court of Blaine county is reversed.

DOYLE, P. J., and DAVENPORT, J., concur.