## WILLIAM WEAVER v. STATE.

No. A-8871. Jan. 17, 1936.
(53 Pac. [2d] 696.)

M. O. Counts and D. A. Stovall, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen. (Ralph K. Jenner, of counsel), for the State.

DOYLE, J. The information in this case filed in the district court of Choctaw county, March 7, 1934, omitting merely formal parts, charges:

"That William Weaver did in Choctaw county, state of Oklahoma, on or about the 19th day of May, 1933, and anterior to the presentment hereof, commit the crime of Arson 2nd Degree in the manner and form as follows, to wit: That the said defendant William Weaver and Mrs. William Weaver and one Earl Cook then and there being and acting together with the one purpose and design, did willfully, wrongfully, unlawfully, maliciously, and felon-

iously in the nighttime set fire to and burn with fire a certain building to wit: a two story brick building located on lot number 5 and block number 101 in the original townsite of the city of Hugo, Choctaw county, the property of one O. Gill, said building being then and there used and occupied by the Griffin Amusement Company with the name Erie Theatre as a public theatre with the unlawful, wrongful and felonious intent on the part of the said defendants to so burn and destroy said building with fire, contrary," etc.

On his trial the jury rendered their verdict finding him guilty of arson in the second degree and fixing the punishment at imprisonment in the penitentiary for one year.

Motion for new trial was duly filed, presented, and overruled.

From the judgment entered in accordance with the verdict, November 24, 1934, he prosecutes this appeal.

As reasons for a reversal, various errors are assigned, among them being that the court erred in giving and refusing certain instructions; and that the court erred in refusing to direct a verdict of acquittal on the ground that the evidence was insufficient to warrant conviction, because the witnesses Earl Cook and Emmett Cook were accomplices.

The only question that we deem necessary to discuss is the sufficiency of the evidence to sustain the conviction.

In this case there was no controversy about the fact of the burning or attempted burning of the building described in the information. About 5 o'clock in the morning on the date alleged a fire started in the northeast corner of the building under a stairway, another in the southeast corner of the building in a pasteboard box, and that the fires were quickly extinguished.

Earl Cook testified that he lived at Idabel, had known the defendant about two years, but had no business dealings with him, except that he talked to him about a job in his theatre, that the defendant came to his home in Idabel one night and called him out, then he got in the defendant's car and rode down to Little River and back, that the defendant asked him if he wanted a job, and if he would be interested in getting this Erie show out of the way by burning it or any other way; that he told the defendant that he might if there was a job in it, and the defendant said, "Come up and see me," that this was about a week before the fire; that on the following day he went to Hugo and saw the defendant in his office at the Hugo Theatre. Then and there the defendant told him he would give him a job and $100 to burn the Erie Theatre; that he told him that he would, and the defendant gave him $25. He then went back to Idabel; that several nights later he went back to Hugo and entered the theatre through the booth window and set the building on fire in two places; that a week later he was arrested, charged with this crime; that he saw the defendant only one time after the fire.

On cross-examination he stated that never, before Weaver came to him to talk about burning the theatre, did he have a personal conversation with Weaver; that while in jail he talked to the county attorney and the assistant and always denied his guilt; that he also talked to the fire marshal and denied his guilt; that different officers talked to him about the attempted burning of the theatre, and in every instance he told them he did not have anything to do with it, and never at any time asserted that Mr. Weaver had anything to do with it until he was placed on trial before a jury on February 13, 1934, and after the state had offered its evidence, and after a conversation with the county attorney and others he withdrew his plea

of not guilty and entered a plea of guilty; that the officers told him, "That they would be easy on him." Asked "If at the time you changed your story you were told by any person in authority, and officers of the county if you would come clean and tell this story you would be given consideration by reason of that?" he answered: "Yes, sir." That he had been at liberty since that time, and had never been sentenced on his plea of guilty.

Emmett Cook testified that after his brother Earl was placed in jail he came from Idabel to see him; that his brother told him about the charge against him and asked him to see Mr. Weaver and tell him he wanted some money to make a bond; that he went to see the defendant on three different occasions. On the first the defendant gave him a $10 bill and said: "Tell Earl to keep quiet and not to say anything," that on the next occasion he gave him $5 and some change to buy Earl cigarettes with, and said: "Tell Earl to keep quiet about it." That on the third occasion the defendant gave him $40 to help make a bond for Earl; that he went alone each time and no one was present at his conversations with the defendant.

On cross-examination he testified that he was twenty-seven years of age and is now serving a sentence in the Federal Penitentiary at El Reno; that he used this money he got from Weaver to pay bondsmen for his brother, who had been in jail twenty-seven days when the bond was made; that he never did tell the defendant that he was to pay his brother $100 for the fire; and that he had no talk with him about the fire.

Mrs. Claude Downs testified that the defendant stayed at her place a part of the time and next door with her mother-in-law.

Against objection she further testified that some person unknown to her came to her house and inquired for Earl Cook, then went to the next door and found Earl and they left in a car.

It is stipulated and agreed in the record that O. Gill was the record owner of said property; that there was a mortgage on said property which had matured February 2, 1933, for the principal sum of $15,000 in favor of the Midland Saving & Loan Association of Denver, Colo.

At the close of the state's case, the defendant interposed a demurrer to the evidence on the ground that the same is insufficient to warrant a conviction, which was overruled.

On the part of the defendant several witnesses were called and asked if they knew the general reputation of the witness, Emmett Cook, for truth and veracity in the community in which he lived, answered that they did; asked is it good or bad, they replied, "It is bad."

As a witness in his own behalf, William Weaver testified that he was born near Ada, age 40 years, married man with a family, has been engaged in the picture show business 22 years, had owned and operated 18 or 20 theatres, operated a theatre in Hugo from August 6, 1932, until June 19, 1933; that he had a casual acquaintance with the witness Earl Cook, who had at one time asked him for a job; that he never had any conversation whatever with Earl Cook about burning or destroying the Erie Theatre; that he did not go to Idabel as testified by Earl Cook to arrange with him to burn this theatre; that he never had any confidential relations of any kind whatever with him; that he had nothing to do in any way with the attempted burning of the Erie Theatre.

He further testified that he did not know Emmett Cook and never had a conversation of any kind with him; that neither Earl Cook nor Emmett Cook ever asked him or talked to him about making a bond for Earl; that about a month after the alleged fire he sold his show to the Griffin Amusement Company and moved to Arkansas City, Kan.; that the first he knew of any charges against him was when he saw it in the newspaper in March, 1934; that he had never been convicted of any crime, or arrested, or charged with any offense in his life prior to this charge.

During the trial the defense called several witnesses, and, after qualifying them as character witnesses, they each testified that the general reputation of the defendant in the communities in which he had lived as to being a law-abiding citizen was good.

At the close of the evidence the defendant moved for a directed verdict of acquittal on the ground that the evidence is insufficient to convict him of the offense charged, which motion was denied.

The contention of the defendant is that the witnesses, Earl and Emmett Cook, were accomplices; that their testimony was uncorroborated; and that therefore the court erred in refusing to direct a verdict of acquittal.

After a careful review of the record, we are of the opinion that the motion for a directed verdict should have been sustained.

"The rule of law forbidding a conviction upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense is, under the statute (section 3071, St. 1931), positive and peremptory.

" 'The corroborative evidence must of itself, and without the aid of the testimony of the accomplice, tend in some degree to connect the defendant with the commission

of the offense; and independent evidence merely consistent with the main story is not sufficient corroboration if it requires any part of the accomplice's testimony to make it tend to connect the defendant with the crime.'

" 'There must be some evidence, which of itself, and without aid from the accomplice's testimony, tends to connect the defendant with the offense committed.' " Rogers v. State, 57 Okla. Cr. 294, 48 Pac. (2d) 344, 346.

When the question of an accomplice arises in the trial of a case, the general and accepted rule is for the court to instruct the jury on the law of accomplice testimony, and leave the question as to whether or not the witness is an accomplice for the determination of the jury as a question of fact. But where the facts are not in dispute, or where the acts and conduct of the witness are admitted, it becomes a question of law for the court to say whether or not those acts and facts make the witness an accomplice. Where he is admitted to be such, or where the undisputed facts show him to be an accomplice, the court may so charge without invading the rule that the court should not comment on the credibility of any witnesses. Cudjoe v. State, 12 Okla. Cr. 246, 154 Pac. 500, L. R. A. 1916F, 1251.

Therefore, whenever upon appeal it is contended that the conviction was had upon the uncorroborated testimony of an accomplice, it is equivalent to the declaration that the verdict is contrary to the law and the evidence, and this is always a legal question. Yeargain v. State, 57 Okla. Cr. 136, 45 Pac. (2d) 1113.

Independent of the testimony of the accomplice, Earl Cook, there is no substantial evidence tending to connect the defendant with the commission of the crime charged.

Having reached this conclusion, we deem it unnecessary to discuss the other errors presented in the brief.

The judgment of the lower court is therefore reversed and the cause remanded with directions to dismiss.

EDWARDS, P. J., and DAVENPORT, J., concur.