## OTHO KENNEDY v. STATE.

No. A-9394.   Sept. 23, 1938.

(83 P. 2d 198.)

78

Mathers & Mathers, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and E. Smith Hester, Co. Atty., of Purcell, for the State.

BAREFOOT, J.  The defendant was charged in the district court of McClain county with the crime of larceny of domestic fowls; was convicted and sentenced by the court to serve a term of one year in the state reformatory at Granite, and has appealed.

An information was filed in the district court of McClain county charging Otho Kennedy and Frank Brown with the crime of larceny of domestic fowls, on or about the 5th day of March, 1937.  Frank Brown pleaded guilty to the charge, and testified for the state in this case.  The record reveals that he had been formerly convicted and served a sentence in the penitentiary.

His testimony was that he met the defendant Otho Kennedy and Fred Hogue, on the streets of Purcell about 6:30 on the evening of March 5, 1937.  That they were in a car belonging to defendant and they asked him to ride with them.  During this time they discussed stealing some chickens, and he would not go with them, but got out of

the car, and a little later met them at a barn about a mile from the business district of Purcell, and they had with them some chickens. That he helped them sack the chickens, and that because neither of the other two boys wanted to sell the chickens he took them and sold them to a produce house in Purcell about 9:30 at night. He said that he used the automobile of the defendant, Otho Kennedy, to deliver the chickens. That he received a check for $4.50 for the chickens. That the check was made out in his name and that he cashed the same at a drugstore in Purcell. This testimony is corroborated by the manager of the produce house, who testified that defendant was not present at the time that the chickens were sold and he never saw the defendant at any time. He testified that while going to deliver the chickens that he ran out of gas and went to a filling station for the purpose of procuring gas. That defendant was with him at this time. That the chickens were sold at about 9:30 p. m., and that after he sold the chickens that the three of them parked the car near the front of the "Lucky 77 Tavern" on the main street of Purcell.

Being an accomplice it, of course, was necessary, under the law, that his evidence should be corroborated, and by the testimony of other witnesses for the state, it was attempted to do this. The testimony of Sam Husky was that he was a policeman at Purcell and that on the night of the 5th of March, 1937, he parked his car in front of the "Lucky 77 Tavern" about 9:20 at night. In about 10 minutes he saw the defendant and Frank Brown and Fred Hogue park their car and pass by his car going into the "Tavern." Elmer Meyers and his wife identified the chickens found at the produce house as being the ones stolen from them on the night of March 5, 1937.

The sheriff and a deputy sheriff testified that while defendant and Frank Brown were in jail they heard a conversation between them in which it was discussed as

to whether or not defendant would plead guilty, and that defendant, in this conversation, made the statement that he wouldn't go to the penitentiary for $1,500, and that he asked Frank Brown to plead guilty and take the blame and he would give him $500, and other similar statements.

Mr. Roy Williams, manager of the produce company, also testified that it was his judgment that the car in which the witness Brown delivered the chickens had red wheels, and was a car that was driven by defendant. His testimony was that the car was in the alley and it was in the night time about 9:30, and that he did not make a close inspection of the same.

We have carefully examined the evidence offered by the state to corroborate the witness Brown, and when taken together with the other evidence offered in this case, it does not appeal to us as being sufficient to sustain the conviction of this defendant and cause him to serve a sentence in the reformatory. In the first place, the evidence of the prosecuting witness was that he was not only an accomplice but he was a former convict. His story that the defendant was the party who suggested the stealing of the chickens and that he refused to go with him and got out of the car is quite unreasonable. He also testified that while driving with the parties they went to a gasoline station for gas. He gives the name of the station, yet the party who served them was not called by the state as a witness to corroborate this testimony. Nor was there produced the party whom he claims to have paid for the gasoline out of the proceeds of the money he received from the sale of the chickens. He also definitely names James Tyler and his father as being present at the service station, but neither of these parties was produced by the state to corroborate the testimony of the witness.

The defendant, testifying in his own behalf, denied all participation in the theft of the chickens or receiving any part of the proceeds of the sale thereof. He testified

to meeting the witness Brown and Fred Hogue on the streets of Purcell about 6:30 or 7 o'clock and driving around and parking his car in front of the "Lucky 77 Tavern" at about 7:30 in the evening. That they got out of his car and parked the same directly in front of the Tavern. That he did not know where the other parties went, but that he went into the Tavern and remained there until it closed at about 12 that night. That he attended the dance there. In this statement he is corroborated by many witnesses.

W. L. Leveridge, a disinterested witness and merchant from Criner, Oklahoma, testified in detail as to being at the "Lucky 77 Tavern" and seing the defendant there at 8 p. m. He gives reasons as to why he knew that that was the time. Many witnesses, including the proprietor of the Tavern and his wife and many others testified that defendant was at the Tavern from 7:30 until it closed at 12 p. m. He was corroborated as to other details by several substantial witnesses. Several substantial citizens testified as to the good character of the defendant and as to his being a quiet, peaceable and law abiding citizen, and that he had never before been in any trouble. There is some testimony that the witness Brown's reputation for truth and veracity was bad.

After a careful study of this record we are of the opinion that the corroboration of the witness Brown is insufficient to support this conviction. No doubt the defendant was convicted by reason of the testimony of the officers as to the conversation that occurred in the jail as they testified. There was testimony that the witness Brown had arranged to have this conversation so that officers could hear the same and that he did most of the talking. These statements were highly detrimental to the defendant. Evidence obtained in this manner should be very carefully considered. The statement of the defendant was that he knew the conversation with the witness Brown,

who had been let out of his cell so that he could talk with defendant, was being heard by the officers, and that he told the witness that he was not guilty and would not plead guilty thereto. The testimony that he would pay $500 to the witness Brown if he would plead guilty does not seem reasonable for the reason that defendant had no funds of any kind to pay.

By section 3071, Okla. Stats. 1931, 22 Okla. St. Ann. § 742, it is provided:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

The construction of this statute has been before this court many times. It has been uniformly held that the terms of this statute are positive and peremptory, and that the corroborating evidence must tend in some degree to connect the defendant with the commission of the offense and that independent evidence merely consistent with the main story is not sufficient if it requires any part of the accomplice's testimony to connect the defendant with the crime. In the case of Rogers v. State, 57 Okla. Cr. 294, 48 P. 2d 344, the court says (page 300):

"There must be some evidence, which of itself, and without aid from the accomplice's testimony, tends to connect the defendant with the offense committed.

"It is not sufficient corroboration to prove that the crime was committed in the manner described by the accomplice, but his testimony must be corroborated as to the particular defendant.

"It is not sufficient for this purpose merely to connect the defendant with the accomplice, or other person participating in the crime, but evidence, independent of the testimony of the accomplice, must tend to connect him with the crime itself, and not simply with its perpetrators.

"The corroborating evidence may be sufficient although by itself slight, but it is not sufficient if it merely tends to raise a suspicion of guilt. 1 Enc. of Ev., pp. 104, 105, 106, and 108, and cases cited." Peck v. State, 50 Okla. Cr. 213, 297 P. 323; Stevenson v. State, 50 Okla. Cr. 295, 297 P. 328; Hicks v. State, 18 Okla. Cr. 718, 196 P. 144; State v. Roy Wilks, 17 Okla. Cr. 247, 187 P. 813; Weaver v. State, 58 Okla. Cr. 360, 53 P. 2d 696.

On page 302, 48 P. 2d on page 347, the court further says:

"The state only demands the punishment of a citizen when his guilt has been clearly established according to the forms and rules of law, prescribed for ascertaining his guilt. It is not to shield the guilty, but to protect the innocent, that the courts are steadfast in upholding the forms and rules of law by which it may be lawfully determined who are guilty."

We cannot read the record in this case and believe that the defendant should be sent to the reformatory upon the evidence offered. The jury who rendered the verdict refused to assess the punishment. They placed in their verdict this sentence:

"This being the first offense, we recommend leniency."

We are of the opinion that the judgment and sentence should be set aside and the case reversed, and it is so ordered.

DOYLE, J., concurs. DAVENPORT, P. J., absent.